OPINION
{¶ 1} Appellant, James D. Moore, appeals from the January 27, 2003 judgment entry of the Trumbull County Court of Common Pleas, in which he was convicted and sentenced for possession of cocaine.
 {¶ 2} On June 17, 2002, the grand jury indicted appellant on one charge of possession of cocaine, in violation of R.C. 2925.11(A) 
(C)(4)(a), a felony of the fifth degree. At his arraignment on June 20, 2002, appellant entered a plea of not guilty. A jury trial took place on January 6, 2003.
 {¶ 3} At the trial, Officer Greg Hoso ("Officer Hoso") and Officer Jeffrey Fusco ("Officer Fusco") of the Warren City Police Department took the stand and related that on August 17, 2001, while they were on routine patrol during the day shift, they observed a vehicle backed into a driveway of a house on 415 Oregon Street in Warren, Ohio, which they thought was vacant. This particular house shared a driveway with a known crack house. The auto was parked in the driveway more toward the vacant house. Both officers stated that they became highly suspicious since there were two individuals sitting inside a car in the driveway of a vacant house. Officer Fusco approached the driver's side of the automobile, and Officer Hoso went to the passenger side. As Officer Hoso was doing that, he noticed "the passenger had put his left hand behind the driver seat * * *." Officer Hoso told Officer Fusco that the passenger had "just dropped something" and to keep an eye on him.
 {¶ 4} Meanwhile, Officer Fusco identified the driver as William Rainge ("Rainge"), and learned through dispatch that there was an active warrant for his arrest. He had Rainge exit the car and arrested him. Officer Hoso asked the passenger, who was later identified as appellant, his name, social security number, and birth date. Appellant provided Officer Hoso with the proper name, but with a false social security number and false birth date. Officer Hoso requested that appellant step out of the car and inquired if he had anything in his pockets. According to Officer Hoso, appellant "was kind of nervous, jittery, and he said no and he pulled out of his left pocket a lighter and a glass crack pipe."
 {¶ 5} Officer Hoso initially placed appellant into custody for drug paraphernalia. He retrieved the object from the back seat of the car that he had seen fall from appellant's left hand It was a bag that contained two off white small rocks, which were later determined to be .05 grams of cocaine. Officer Fusco testified that he saw Officer Hoso retrieve the two rocks of crack cocaine. The officers also recovered a pack of Newport cigarettes with another larger crack pipe inside the cigarette case from the front seat of the car.
 {¶ 6} At the close of the state's case, appellant moved for a dismissal, which the trial court overruled. Appellant took the stand in his own defense.
 {¶ 7} Appellant related that the home on Oregon Street was not abandoned, and that he was parked in the driveway of a friend by the name of Eric Rivers. He stated that he was in the vehicle of a friend, who was called "Big D."[1] Appellant revealed that he had been in prison twice, once in 1987 for robbery, and once in 1997 for theft. Appellant stated that he did not have any drugs. He explained that if he had been doing drugs, his pipe would not have been in his pocket. He denied placing the baggie of cocaine in the back of the car.
 {¶ 8} Appellant further indicated that Officer Hoso "has a knack for lying on people." Appellant believed that Officer Hoso was "pick[ing] on the little fish" since he was scared to go into the house because there were "big money boys in there" who were dangerous. Appellant admitted to giving Officer Hoso an incorrect social security number and birth date. He explained that he lied because he had not reported to his probation officer, and there was a warrant for him.
 {¶ 9} The jury returned with a guilty verdict to the charge of possession of cocaine. On January 21, 2003, appellant was sentenced to a term of ten months in jail. Appellant timely filed the instant appeal. However, on April 24, 2003, the trial court amended its January 21 entry and sentenced appellant to nine months instead of ten months.[2]
Appellant presents the following assignments of error for our review:
 {¶ 10} "[1.] The trial court abused its discretion in failing to grant appellant a continuance to locate his witness.
 {¶ 11} "[2.] The trial court erred in not granting appellant's request for a mistrial.
 {¶ 12} "[3.] [Appellant's] convictions are against the manifest weight of the evidence."
 {¶ 13} Under the first assignment of error, appellant claims that the trial court abused its discretion when it failed to grant him a continuance to locate a witness.
 {¶ 14} The grant or denial of a continuance is a matter entrusted to the broad discretion of the trial court. State v. Powell (1990),49 Ohio St.3d 255, 259. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Id. at 260. "Whether the court has abused its discretion depends upon the circumstances, `particularly * * * the reasons presented to the trial judge at the time the request is denied.'" Id. at 259. A reviewing court must weigh the potential prejudice to a defendant against a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Id.
 {¶ 15} In evaluating a motion for a continuance, the factors to be considered by the trial court include: (1) the length of the delay requested; (2) whether other continuances were requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay was for legitimate reasons or whether it was dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which caused the request for a continuance; and, (6) other relevant factors, depending on the unique facts of each case. State v. Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 16} The record before us reveals that a pretrial was held on December 17, 2002, where appellant requested a continuance because he was unable to locate the driver of the car in which he was a passenger. Appellant at first stated that the driver was a friend of his and that his name was Alfred Jackson. Appellant later indicated that that may not be his real name. The prosecutor looked through his information and revealed that the state was looking for a "William Rainge on Palmyra Road." Appellant recognized that name and told the court "[t]hat's him." The trial court explained that since there was still three weeks before the trial, the court would not continue the trial date and suggested that appellant "look hard for that witness." The trial judge added that appellant "should be able to find him here over the holidays * * *."
 {¶ 17} During the trial, before the jury began deliberations, a discussion took place in chambers. Appellant's attorney indicated that appellant had located Rainge, and Rainge agreed to be in court. However, after appellant went to Rainge's house, the police raided it. Defense counsel believed that even though Rainge was not in jail, it was too coincidental that he was raided after they left court on January 6.
 {¶ 18} The trial court explained that since Rainge "was not declared as a witness on any witness list. * * * It was only last evening you requested the opportunity to bring him forward. * * * He's not here is the final line at this time."
 {¶ 19} We are unpersuaded that the trial court abused its discretion in denying appellant's motion for continuance. At the pretrial, appellant did not estimate how long it would take to locate his witness. Also, appellant was not sure whether he was looking for Alfred Jackson or Rainge, whose name and address was provided by the state to the defense during the discovery process. Furthermore, appellant did not offer a reason why he was looking for this witness; nor did he request a continuance at the commencement of the trial on January 6, 2003, which would have given the court some indication that he had still not located the witness. It was not until the state presented its evidence and appellant testified that defense counsel raised the issue of Rainge's testimony and his alleged appearance. Appellant's attorney noted that appellant had located Rainge and that he disappeared during a raid in the city of Warren. However, appellant's counsel did not renew his motion for a continuance when the trial court gave him an opportunity to do so. Finally, there is no evidence in the record that appellant tried to subpoena the witness once he was given the address. Consequently, appellant's first assignment of error is meritless.
 {¶ 20} In the second assignment of error, appellant alleges that the trial court erred when it did not grant his mistrial after allowing the state to introduce evidence that was misleading to the jury.
 {¶ 21} It is within the sound discretion of the trial court to grant or deny a motion for mistrial. State v. Garner (1995), 74 Ohio St.3d 49,59. An appellate court will not disturb the trial court's decision absent a showing that the accused has suffered material prejudice. State v.Sage (1987), 31 Ohio St.3d 173, 182. "Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Garner at 59. When the grounds for a mistrial are based on prosecutorial misconduct, a defendant must show that the alleged misconduct deprived him of a fair trial. State v. Hawkins (1993),66 Ohio St.3d 339, 348; State v. Apanovitch (1987), 33 Ohio St.3d 19,24.
 {¶ 22} Here, we find no abuse of discretion in the trial court's decision to deny appellant's request for a mistrial. Appellant requested a mistrial when the prosecution introduced a piece of evidence that did not belong to appellant, i.e. the second crack pipe located in the Newport cigarette package. Officer Hoso testified that he did not know for sure who the second crack pipe belonged to, but he charged Rainge with possession of it. Specifically, the following colloquy took place:
 {¶ 23} "MR. CONSOLDANE: * * * I want to move * * * for a mistrial for him * * * showing a piece of evidence that he knows does not belong to [appellant]. That is completely unfair. And to be able to introduce a crack pipe that from the police's own report and the prosecutors know that doesn't belong to [appellant], it should have never been brought into this courtroom.
 {¶ 24} "MR. MORROW: * * * the jury is allowed to make inferences as to whether [appellant] obtained, possessed or used. And a crack pipe is an instrument which can be used * * * with cocaine. And in this case, the [s]tate is not limited to merely physical possession. * * *
 {¶ 25} "THE COURT: Well, we don't know if he had this crack pipe on him.
 {¶ 26} "MR. MORROW: No. I will state for the record that the report that Mr. Consoldane was provided with, the driver says the crack pipe was his. * * * And the [s]tate can easily infer that [appellant] was using with the crack pipe belonging to the * * * driver.
 {¶ 27} "THE COURT: Well, * * * I don't want to give the jury the wrong impression that the evidence is other than it appears to us here.
 {¶ 28} "* * *
 {¶ 29} "THE COURT: All right. I am going to overrule your motion for mistrial. * * *"
 {¶ 30} A bit later in the trial, while appellant's attorney was questioning Officer Hoso, the following exchange took place in the judge's chambers:
 {¶ 31} "THE COURT: * * * Mr. Consoldane, do you intend to pursue any further line of questioning regarding that second crack pipe at this time?
 {¶ 32} "MR. CONSOLDANE: Well, no, not unless the Court will allow me to, you know, impeach the witness. But at this point, though, I think it's incumbent upon me to renew that motion for a mistrial.
 {¶ 33} "* * *
 {¶ 34} "THE COURT: * * * you may continue to address your motion for mistrial at this point in time.
 {¶ 35} "MR. CONSOLDANE: * * * I think that it was totally irresponsible on the State's part to introduce that second crack pipe. They knew that that was not my client's crack pipe. * * * It's, it's trying to influence the jury with evidence that shouldn't be there. It's trying to infer that [appellant] possessed two crack pipes when they only had the one. * * *
 {¶ 36} "* * *
 {¶ 37} "MR. MORROW: * * * Regardless of whether the crack pipe belonged to [Rainge] or not is irrelevant. It proves the fact that there is the possibility of use. * * * While I understand that Mr. Consoldane is upset that he's unable to procure the attendance of [Rainge] to come and testify * * *, I think it's erroneous for him to suggest that the State had the nefitarious purpose * * * [of] presenting false evidence. * * *"
 {¶ 38} Although the trial court denied the motion for mistrial, the judge excluded the second crack pipe as evidence and directed the state not to make any inferences regarding the second crack pipe having any relationship to appellant during closing arguments. It is our view that the introduction by the state of this evidence was error as it had no competent evidential basis. However, any error that may have occurred was harmless at best since Rainge was charged with possession of the larger crack pipe found in the front seat of the vehicle. We conclude that appellant was not prejudiced since Rainge was charged with possession of that pipe. However, this type of tactic by the prosecutor is not to be applauded. Under different circumstances, a kindred ploy as this could well be grounds for reversal. This court would also emphasize that the propensity of this particular prosecutor's office to adopt the apparent position that such a pronouncement by us did not result in a reversal, and, thus, prospectively it remains "fair game" in future cases is most inappropriate. The state's representatives here are reminded that their role is not one of making coup, but it is for the advancement of the pursuit of truth.
 {¶ 39} Ultimately, we do not find cause to question the fairness of appellant's trial or the integrity of the trial court's findings. Thus, the instance of alleged prosecutorial misconduct did not deprive appellant of the right to a fair trial and did not entitle him to the declaration of a mistrial. Appellant's second assignment of error is without merit.
 {¶ 40} For the third assignment of error, appellant posits that his convictions are against the manifest weight of the evidence.
 {¶ 41} In State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 5, we stated that:
 {¶ 42} "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 43} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *." (Emphasis sic.)
 {¶ 44} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Moreover, when reviewing a claim that a judgment is against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact lost its way and created a miscarriage of justice. State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 45} The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion.Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph two of the syllabus. When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120, 123.
 {¶ 46} The instant matter was a classic credibility contest between appellant and the police. Appellant's testimony at trial conflicted with Officer Hoso's and Officer Fusco's. The jury evidently chose to credit the police officers' testimony.
 {¶ 47} Appellant admitted that the crack pipe belonged to him. Furthermore, there are reasons why the jury might have tended to disbelieve appellant. First, appellant acknowledged that he gave Officer Hoso a phony social security number and birth date. In addition, appellant testified that he had been in prison for robbery and theft on two separate occasions.
 {¶ 48} Accordingly, the jury acted well within its discretion when it elected to believe Officer Hoso and Officer Fusco rather than appellant. In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Appellant's conviction is not against the manifest weight of the evidence. Appellant's third assignment of error is without merit.
 {¶ 49} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Judgment affirmed.
Christley, J., Rice, J., concur.
[1] Appellant testified that he did not know whether Big D's correct name was Rainge. He always referred to him as Big D.
[2] We note that the filing of a notice of appeal divests the trial court of jurisdiction over that part of the final order, judgment or decree which is sought to be reviewed. See Majnaric v. Majnaric (1975),46 Ohio App.2d 157, 158. Therefore, once the appeal was filed, the trial court's jurisdiction was frozen. However, the issue is waived since it was not raised by appellant.