DECISION AND JUDGMENT ENTRY
{¶ 1} Christi R. Colbert appeals the trial court's judgment convicting her of complicity to theft, contending that the state failed to present sufficient evidence that she aided or abetted the principal offender, Jeri N. Manering, and that her conviction is against the manifest weight of the evidence. Specifically, she asserts the state failed to prove beyond a reasonable doubt that she knew of Manering's intent to steal cosmetics while the two shopped at Wal-Mart. Circumstantial evidence supports an inference that Colbert knew of Manering's intent to shoplift when Colbert placed the items in the cart. And the fact that she told two conflicting versions of the incident casts serious doubt upon her denial of that knowledge. Accordingly, we reject her arguments and affirm the conviction.
 {¶ 2} At trial, Wal-Mart Loss Prevention employee Dennis Crabtree said he noticed Colbert in the cosmetics department and started observing her because "[o]ne she didn't have a purse[;] two, she didn't have a shopping cart to put all the make-up in she was carrying. So I thought it was kinda odd that she was selecting all of these items of make-up, with no where to put it." Crabtree then saw Manering, who had a shopping cart, join Colbert. Colbert placed the cosmetics in the cart, and the two women went to the women's clothing area. They said a few words to each other and Colbert walked away. "[A]s soon as she started walking away * * * [Manering] started opening the make-up that [Colbert] had given her over in cosmetics." Crabtree stated that "It was kinda simultaneous. [S]he started walking away and the make-up started coming out the packages." "[W]hen [Colbert] started walking away, [Manering] started opening the package[s] of make-up that [Colbert] had given her." Manering took the make-up out of the packages and put them in her purse.
 {¶ 3} On cross-examination, Crabtree stated that he "assume[ed Colbert] was out of the store" when Manering started removing the make-up from the packages. Colbert's attorney asked: "Colbert's long gone when that happens?" Crabtree responded: "Right. I'm assuming she was out of the store."
 {¶ 4} Colbert testified that Manering asked her to take her to Wal-Mart. While there, Manering asked Colbert to pick out some make-up for Manering. Colbert stated that the lights were bothering her eyes because she had a migraine headache and told Manering she would wait in the car. She stated the make-up was still in the cart when she left the store.
 {¶ 5} On rebuttal Crabtree testified when he confronted her at the store, Colbert told him the cosmetics were for her, not Manering, contrary to her trial testimony. She told Crabtree she instructed Manering to pay for them. The trial court found her guilty of aiding or abetting Manering in committing a violation of Jackson City Ordinance 545.05, theft, in violation of Ordinance 501.10.
 {¶ 6} Colbert raises the following assignment of error:
The trial court's verdict finding the defendant-appellant guilty of complicity to commit theft was against the manifest weight of the evidence whereas there was insufficient evidence at trial to support the conviction.
 {¶ 7} In her sole assignment of error, Colbert contends that the state failed to present sufficient evidence to support her conviction and that her conviction is against the manifest weight of the evidence. She asserts that the theft offense did not occur until after she left the store and that she did not know that Manering would steal the cosmetics.
 {¶ 8} When reviewing the sufficiency of the evidence, we examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 9} When considering whether a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998),84 Ohio St.3d 180, 193, 702 N.E.2d 866. We sit, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. We must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, but keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79,80, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. We may reverse the conviction only if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Conversely, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 10} Jackson City Ordinance 501.10 sets forth the essential elements of complicity:
(a) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
(1) Solicit or procure another to commit the offense;
(2) Aid or abet another in committing the offense;
(3) Cause an innocent or irresponsible person to commit the offense.
 {¶ 11} Jackson City Ordinance 545.05 sets forth the offense of theft:
(a) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
(1) Without the consent of the owner or person authorized to give consent;
(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation.
 {¶ 12} Here, Colbert argues the evidence fails to establish she knowingly assisted Manering's efforts to steal the cosmetics. Aiding and abetting may be shown by both direct and circumstantial evidence. But mere presence at the scene or subsequent physical proximity to the stolen item is not sufficient to allow the case to proceed to the factfinder. See Mootispaw, 110 Ohio App.3d at 570.
 {¶ 13} When viewing the evidence in a light most favorable to the prosecution, we conclude the state presented enough circumstantial evidence to permit a reasonable fact finder to infer that Colbert knew about Manering's intent to steal the cosmetics. First, the evidence established that the two arrived together after Manering asked Colbert to take her to the store. Thus, they had the opportunity to discuss what was about to occur. Colbert selected the cosmetics and placed them in Manering's cart. After placing the items in Manering's cart, Colbert accompanied her to the clothing department where they had a brief conversation. Colbert then left Manering, who began to remove items from their packaging and conceal them in her purse. The temporal relationship between these events would allow a reasonable person to infer a logical connection between them also, i.e., the conversation, departure, and concealment were connected. Viewed together, these acts and the inferences arising from them would allow a reasonable person to conclude that Colbert knew of Manering's intentions. Thus, the trial court properly rejected Colbert's motion to dismiss.
 {¶ 14} We turn now to her manifest weight of the evidence argument. Although a verdict is supported by sufficient evidence, a court of appeals may nevertheless conclude that the verdict is against the manifest weight of the evidence. State v. Banks (1992), 78 Ohio App.3d 206, 214,604 N.E.2d 219. A sufficiency of the evidence challenge tests whether the state's case is legally adequate to go to a jury in that it contains prima facie evidence of all the elements of the charged offense. State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; Carter v.Estell (C.A. 5, 1982), 691 F.2d 777, 778. A weight of the evidence argument merely tests the rational adequacy, i.e., persuasiveness, of the evidence. The two tests are distinct, notwithstanding dicta to the contrary in State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. See State v. Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541 (Cook, J., concurring).
 {¶ 15} In weighing the evidence, we are faced with what initially appears to be two equally plausible versions of the events. The state contends the two acted in concert, which appears to be a reasonable interpretation of the events. Colbert contends she had no knowledge of Manering's intent and left the store because her migraine headache was bothering her, rather than because she had completed her part of their scheme. As we indicated, both these versions of the event seem plausible and were that all there was to it, we would conclude that the state did not prove Colbert's intent beyond a reasonable doubt. In our view, however, the fact that Colbert made a prior inconsistent statement to Crabtree about the incident sealed her fate.
 {¶ 16} Colbert claims that the facts here are similar to those inState v. Ratkovich, Jefferson App. No. 02-JE-16, 2003-Ohio-7286. InRatkovich, the defendant was convicted of complicity to commit theft. She drove her adult son, Jason Cornell, to the Circuit City store and waited in the parking lot. While there, Cornell stole two Sony Playstation game systems. As he tried to leave the store, he set off an alarm and the store manager chased him into the parking lot. Cornell jumped into the defendant's (his mother) car and yelled for her to leave because he had just stolen some items form the store. The defendant tried to drive away but another vehicle blocked her path. She threw the vehicle into reverse and almost hit the store manager. She then left the parking lot and drove home. A jury subsequently found the defendant guilty of complicity to commit theft.
 {¶ 17} On appeal, the court determined that the trial court should not have instructed the jury on complicity to commit theft. The court explained:
To prove that appellant was guilty of complicity, appellee had to show that she knew Cornell was going to steal from Circuit City when she dropped him off. If she was unaware of Cornell's intention to steal, she could not be convicted of complicity. The only evidence that might suggest that appellant knew Cornell was going to steal anything from Circuit City when she dropped him off was Romonovich's testimony that when she chased Cornell out of the store, he jumped into a Jeep Grand Cherokee, which was waiting in the first parking space with the engine running. But even this evidence is tenuous at best. It is a significant jump to conclude that because a mother drops her son off and waits for him to go into a store with the engine running in a close parking space that she knew he was going in to commit a theft.
Id. at ¶ 23. The court thus reversed her conviction.
 {¶ 18} Ratkovich is distinguishable. In Ratkovich, scant evidence existed to support a finding that the defendant knew of her son's intent to steal. Here, in contrast, Colbert's conduct in selecting the cosmetics, placing them in the shopping cart, conversing with Manering, and then walking away as Manering began opening the packages is suspicious and permits an inference that she aided and abetted Manering in stealing the items. Colbert did not just simply sit idly by, like the defendant in Ratkovich, and wait for Manering to complete her actions. Moreover, her inconsistent statements concerning who the cosmetics were for provided the court with a reasonable basis for discrediting her claim that she lacked knowledge of Manering's intent.
 {¶ 19} At trial Colbert testified that she gathered the cosmetics for Manering at Manering's request. When she was confronted by Crabtree at the scene, her version of the events was different. She told Crabtree the cosmetics were hers and she gave them to Manering and instructed Manering to pay for them because she didn't have any money. This discrepancy casts doubt upon Colbert's version of the events and justifies the court's inference about her knowledge of Manering's intent to steal.
 {¶ 20} Consequently, we reject Colbert's sole assignment of error and affirm the court's judgment.
 JUDGMENT AFFIRMED. JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment Only. Kline, J.: Dissents.
For the Court