OPINION *Page 2 
{¶ 1} Defendant-appellant, Richard D. Buelow ("Richard"), and his brother, defendant-appellant, Eric A. Buelow ("Eric") (collectively, "appellants"), appeal from their respective convictions by the Franklin County Court of Common Pleas for theft. For the reasons we detail below, we affirm Richard's conviction, and we reverse Eric's conviction.
 {¶ 2} The Franklin County Grand Jury indicted each appellant on one count of theft, a fifth-degree felony, in violation of R.C. 2913.02. Appellants moved for a joint trial, and they agreed to a bench trial, which occurred on March 16, 2007. The evidence consisted of the following.
 {¶ 3} Debra Brock testified that appellants had performed odd jobs at her home over a period of years. She testified that, on September 6, 2006, between 7:30 and 8:00 p.m., appellants came to her home and asked if she had any work for them to do. She told them that she did not have work for them. They then asked Ms. Brock if she "had two or three dollars." (Tr. at 10.) She told them she did not have money to give them, although she had given them money in the past "every once in awhile." (Tr. at 11.)
 {¶ 4} Debra Butcher testified that she and her husband own a home "two doors down" from Ms. Brock. (Tr. at 13.) Mrs. Butcher testified that she first met appellants in late October/early November 2005, when they asked if they could mow the Butchers' lawn. She testified that they mowed the lawn regularly throughout the spring and summer in 2006. *Page 3 
 {¶ 5} Mrs. Butcher testified that appellants came to the Butchers' home on Wednesday, September 6, 2006, at about 8:00 p.m. She opened the door and invited them in. She said that she and her husband had spoken earlier to appellants about moving some items that coming Saturday, and appellants were there to determine what time the Butchers would need them on Saturday. The front door of the Butchers' home opens to the kitchen.
 {¶ 6} Mrs. Butcher then testified about the routine she follows each day and evening with her jewelry. She testified:
 * * * Every day when I come home, I would take off this ring, this ring, my earrings and my watch and keep them in a neat, little stack close to the sink. Because my routine every morning then was that is where I went to put my jewelry on before I left. Every day when I came home, that was exactly the routine. That I would put everything right there together.
(Tr. at 17.)
 {¶ 7} Mrs. Butcher testified that she followed this same routine with her jewelry on September 6, 2006, before appellants arrived. Her jewelry that evening consisted of a diamond and sapphire ring, her anniversary band, a pair of gold earrings, and a gold wristwatch. She stated that at least some of these items were in plain view in the kitchen, next to the mail she placed on the counter when she answered the door.
 {¶ 8} Mrs. Butcher testified that, when appellants entered the home, Eric "stepped in and kneeled down" near the door, and Richard asked for water. (Tr. at 19.) Appellants asked what time they would be needed on Saturday. She testified: "They kept asking what time. I said I don't know what time. We will call. And they said they were going to get a truck. They really needed to know what time." (Tr. at 20.) Although she told them that she and her husband would call them, "[t]hey insisted on *Page 4 
knowing what time." (Tr. at 20.) At that point, Mrs. Butcher left the kitchen for 60 to 90 seconds and went to talk with her husband, who was down the hall. When she returned, "Eric was still at the doorway, but he stood up, and [Richard] was headed back to him. I told them what time. They said, okay, thanks, and they left." (Tr. at 21.)
 {¶ 9} Upon questioning, Mrs. Butcher stated that both Richard and Eric "seemed nervous, and they were in a hurry to leave." (Tr. at 21.) In the past, appellants would talk, get a drink of water, and/or use the bathroom or telephone. On the date in question, however, "they were in a big hurry to leave." (Tr. at 22.) Mrs. Butcher also testified, however, that "[Richard] always appears nervous. That is kind of the way he is." (Tr. at 24.)
 {¶ 10} After appellants left, Mrs. Butcher discovered that her diamond and sapphire ring, valued at $700, was missing. Although she had placed the jewelry in a neat pile, it was now scattered on the counter. She and her husband searched the entire area for the ring and went through the garbage, but never recovered the ring.
 {¶ 11} On re-cross examination, Mrs. Butcher testified that she never saw Richard at the sink, but she heard water splash as she left the room and assumed that he dumped water from his water bottle into the sink. He then would have filled the water bottle from a spout on the refrigerator. She also stated that Eric remained by the door.
 {¶ 12} Following Mrs. Butcher's testimony, the state rested. Counsel for the defendants moved for dismissal under Crim.R. 29; the court denied the motion. The defense called no witnesses. *Page 5 
 {¶ 13} The court thereafter identified a number of "relevant facts": the two brothers appeared together frequently and seemed to have a close, personal relationship; appellants needed money on the date in question; Mrs. Butcher was "a creature of habit" regarding her jewelry; Mrs. Butcher followed her normal routine that evening; and appellants could observe the ring's location. (Tr. at 40.) The court then stated:
 [Mrs.] Butcher left the room. And when she left the room, the ring was in its appointed spot. She was gone for a very brief period of time.
 And when she came back into the room, the brothers, not consistent with their typical habit of being slow in breaking off conversations, slow to leave, that type of thing, departed in an unusually hasty manner, which was unique enough it registered and made an impression on [Mrs.] Butcher.
 * * *
 The court finally feels that it is relevant to note that Richard was closest to the ring.
 Clearly, there is no direct evidence to indicate which of the two gentlemen took the ring. But a ring isn't an inanimate object. * * * It had to be physically moved.
(Tr. at 41-42.)
 {¶ 14} The court acknowledged that appellants' counsel had raised an "intriguing issue," but noted that appellants could be found guilty of aiding and abetting. (Tr. at 42.) The court explained:
 And I am inferring that one of the two defendants picked up the ring. And that act was either directly observed when it occurred, or became known to the other individual shortly thereafter.
 And the fact that this ring after it was taken was not returned means that one or both of the brothers consciously engaged *Page 6 
in removing the ring; or, that after one of the brothers removed the ring, either instantly or immediately thereafter, that information came known to the other brother, who knew that the one who removed the ring had no right to do so and the ring was not returned.
(Tr. at 43-44.)
 {¶ 15} On these grounds, the trial court found each appellant guilty.
 {¶ 16} Appellants filed separate and timely appeals, which we consolidated for purposes of argument and briefing. They raise the following assignments of error:
 I. The court[']s decision finding the appellants guilty of aiding and abetting theft was not supported by sufficient probative evidence when its decision was based on the Appellants['] mere association with each other.
 II. The court[']s decision finding the appellants guilty of aiding and abetting theft was not supported by sufficient evidence and was against the manifest weight of the evidence when the victim did not see who took the property and the requisite mental state was not proven.
 {¶ 17} By their assignments, appellants argue that the evidence was insufficient to support the convictions, and their convictions were against the weight of the evidence. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, superceded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in Smith, and following Jackson v.Virginia (1979), 443 U.S. 307; State v. *Page 7 Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks, paragraph two of the syllabus; Yarbrough at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim); State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 18} In contrast, in determining whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror."Thompkins at 387. We review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511. *Page 8 
 {¶ 19} The trial court convicted appellants of theft under R.C.2913.02, which provides:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 (3) By deception;
 (4) By threat;
 (5) By intimidation.
 (B)(1) Whoever violates this section is guilty of theft.
 {¶ 20} R.C. 2923.03 also provides:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 * * *
 (2) Aid or abet another in committing the offense[.]
 * * *
 (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
 {¶ 21} Here, plaintiff-appellee, State of Ohio ("appellee"), presented evidence that the ring was in the kitchen when Mrs. Butcher left the room, that appellants were the only other people in the room, and that the ring was gone when she returned. If *Page 9 
believed, this evidence supported the conclusion that either Richard or Eric took the ring.
 {¶ 22} Appellee also presented evidence that Richard was at or near the sink and, therefore, he was closest to the ring, which Mrs. Butcher testified was on the kitchen counter "[a]bout a foot or foot and a half" from the sink. (Tr. at 26.) Although Mrs. Butcher testified that Richard "always appears nervous," she also testified that Richard and Eric were both in a hurry to leave when she returned to the kitchen and that this behavior was unusual for them. (Tr. at 24.) If believed, this evidence was sufficient to support Richard's conviction for theft.
 {¶ 23} We also find that the trial court's conviction of Richard for theft was not against the manifest weight of the evidence. Ms. Brock testified that appellants came to her house on September 6, 2006, and asked her for money. Immediately thereafter, they arrived at the Butchers' home. While appellants had a legitimate purpose for being there — they needed to know what time the Butchers expected them the following Saturday — Mrs. Butcher testified that she had previously told them that she would call them with the time. She attempted to avoid giving them a time when they stopped by the house that evening, but they insisted on having an immediate answer. Thus, while their presence at the Butchers' home was legitimate, it was unnecessary.
 {¶ 24} Mrs. Butcher was also clear about the presence and location of the ring, the time frame during which she was gone from the kitchen, and the disarray of the jewelry and mail upon her return. She gave clear testimony concerning Richard's proximity to the sink and the jewelry, and his movement about the kitchen, when she left the room. According to Mrs. Butcher, Eric knelt down next to the door upon his arrival, *Page 10 
and he rose from that position when she returned to the kitchen. While she testified that Richard commonly appeared nervous, she also testified that their quick departure was uncharacteristic.
 {¶ 25} From this evidence, it was reasonable for the trial court to find Richard guilty of the theft. Admittedly, the evidence was circumstantial, but necessarily so. "Because, aside from an admission of guilt, no direct evidence of a defendant's purpose can exist, the state must rely upon inferences from `the surrounding facts and circumstances' to prove purpose." State v. King (July 18, 1989), Franklin App. No. 88AP-665, quoting State v. Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus. As to those inferences, we reject appellants' contention that the trial court here "stacked" inferences in order to find Richard guilty. Rather, the trial court reasonably inferred Richard's guilt from the presence of the ring when Mrs. Butcher left the room, Richard's close proximity to the ring, his movement within the kitchen, the ring's absence when she returned, and his unusually hurried departure. Therefore, as to Richard, we overrule the first and second assignments of error.
 {¶ 26} The question of Eric's guilt is more difficult, however.
 {¶ 27} Mrs. Butcher testified that both brothers appeared nervous. While she testified that this was typical behavior for Richard, she did not testify that it was typical for Eric. She also testified extensively concerning appellants' usual behavior of talking, using the bathroom or using the telephone. On this occasion, Eric stood up when she returned to the kitchen, appeared nervous, and left hurriedly.
 {¶ 28} However, other than his presence in the kitchen, there was no evidence suggesting that Eric was the one who took the ring. Mrs. Butcher testified that Eric knelt *Page 11 
inside the door when he arrived — several feet away from the sink and ring — and he only stood up when she returned to the kitchen, immediately before appellants left the house. At best, therefore, the evidence supported a conviction for aiding and abetting. After examining the legal standards applicable to such a conviction, however, we conclude that the evidence was insufficient to support Eric's conviction for aiding and abetting.
 {¶ 29} The state may show aiding and abetting through both direct and circumstantial evidence, and a fact finder may infer participation from presence, companionship, and conduct before and after the offense is committed. State v. Jordan, 168 Ohio App.3d 202, 2006-Ohio-538, at ¶ 9, citing State v. Cartellone (1981), 3 Ohio App.3d 145, 150;State v. Mootispaw (1996), 110 Ohio App.3d 566, 570, citing State v.Pruett (1971), 28 Ohio App.2d 29, 34. A person's mere association with the principal offender, however, is not enough. In order to constitute aiding and abetting, the accused must have taken some role in causing the offense. State v. Sims (1983), 10 Ohio App.3d 56, 59. And, even if the accused has some knowledge of the commission of the crime, his presence at the scene is not enough to convict him of aiding and abetting. Jordan at ¶ 8.
 {¶ 30} A person aids or abets another when he supports, assists, encourages, cooperates with, advises or incites the principal in the commission of the crime and shares the criminal intent of the principal.State v. Johnson, 93 Ohio St.3d 240, 245-246, 2001-Ohio-1336. "Such intent may be inferred from the circumstances surrounding the crime." Id. at 246. *Page 12 
 {¶ 31} Appellee argues that the evidence showed that Eric aided and abetted the theft. Appellee notes that appellants arrived at the Butchers' home together, and they both insisted on an immediate answer regarding when the Butchers would need them on Saturday. Eric was nervous and unusually hurried. Appellee also notes that, given the small confines of the kitchen, it is unlikely that Eric did not know about the theft. Their companionship before, during, and after the theft, appellee argues, shows a common purpose, and their need for money provides a common motive. Nevertheless, we find this evidence insufficient to support a conviction for aiding and abetting in this case.
 {¶ 32} First, our review of the record reveals no evidence of an affirmative act by Eric to establish his participation in, or encouragement of, Richard's theft of the ring. As we noted previously, Mrs. Butcher testified that Eric knelt inside the door when he arrived, and he only stood up again when she returned to the kitchen. There is no evidence that Eric diverted Mrs. Butcher's attention or served as a lookout. Cf. State v. Hill, Ashtabula App. No. 2005-A-0010,2006-Ohio-1166. Nor is there evidence that he helped Richard get the ring out of the house or had possession of the ring himself. Cf.State v. Widner (1982), 69 Ohio St.2d 267; Johnson.
 {¶ 33} Second, while we find it unlikely that a theft could have occurred without Eric's knowledge, knowledge and observation of a crime, without more, cannot form the basis of a conviction for complicity.Mootispaw at 571; State v. Cummings (Apr. 21, 1992), Franklin App. No. 90AP-1144. Rather, in order to survive a sufficiency of the evidence challenge on a complicity charge, the state must present evidence upon which a jury could reasonably conclude that a defendant "knowingly" aided the offense. *Page 13 
Although appellants are brothers and were often together, we have no evidence upon which a fact finder could conclude that Eric knew Richard intended to steal the ring or that he was part of a common plan to steal the ring. Cf. Johnson; State v. Colbert, Jackson App. No. 05CA3,2005-Ohio-4427. Nor is there evidence that Eric incited or encouraged the theft. Cf. In re T.K., 109 Ohio St.3d 512, 2006-Ohio-3056; State v.Morris, Franklin App. No. 05AP-1032, 2007-Ohio-2382. Thus, we find that the facts of this case align more closely with those in which the court concluded that the evidence was insufficient to support an aiding and abetting conviction. See, e.g., Jordan; State v. Ratkovich, Jefferson App. No. 02-JE-16, 2003-Ohio-7286; Mootispaw; Sims.
 {¶ 34} For these reasons, we sustain the first assignment of error as it relates to Eric, and we need not reach the second assignment of error as it relates to him. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas as to Eric Buelow in case No. 07AP-318. {¶ 35} However, we overrule the first and second assignments of error as they relate to Richard. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas as to Richard Buelow in case No. 07AP-317.
Judgment affirmed in case No. 07AP-317. Judgment reversed in case No.07AP-318.
 BROWN and KLATT, JJ., concur. *Page 1