OPINION
{¶ 1} Michael J. Grady, appellant ("Mr. Grady"), appeals his DUI conviction and sentence imposed by the Portage County Municipal Court. For the reasons that follow, we affirm.
 {¶ 2} Procedural History and Statement of Facts
 {¶ 3} On October 1, 2006, at approximately 1:45 a.m. Mr. Grady was pulled over by Brimfield Police at a Portage County DUI Task Force checkpoint that was set up on State Route 43 in Portage County. Because the officers detected alcohol on Mr. *Page 2 
Grady's breath and observed that his eyes were glassy and bloodshot, the officers asked Mr. Grady to get out of his car and walk to a nearby diversion area. The officers then had Mr. Grady perform certain field sobriety tests including the HGN test and walk and stand test, which he failed. During the tests, the officers described Mr. Grady as belligerent and uncooperative.
 {¶ 4} Believing Mr. Grady was intoxicated, the police transported him to the Brimfield Police Department. At the station, the officers read Mr. Grady the Bureau of Motor Vehicle 2255 Form ("2255 Form"), which explains the consequences of refusing to take a BAC breathalyzer test including automatic suspension of one's drivers license and the necessity to pay reinstatement fees. While the form was being read to him, the officers stated that Mr. Grady was argumentative and kept rambling and asking questions. Mr. Grady told the police he did not understand the contents of the form. Although it normally took four minutes for officers to review the form with potential offenders, in this instance, the officers took at least ten minutes to try to explain the form to Mr. Grady. Ultimately, Mr. Grady refused to sign the form.
 {¶ 5} The police also attempted to have Mr. Grady sign a personal recognizance bond but he failed to do so. Again, Mr. Grady was described as being uncooperative. As a result, Mr. Grady spent the night in jail.
 {¶ 6} Mr. Grady was charged with driving while under the influence of alcohol, in violation of R.C. 4511.19. Mr. Grady pled not guilty and the matter proceeded to a jury trial on January 16, 2007. In addition to the above testimony by various members of the Brimfield Police Department, Mr. Grady testified in his own defense. Mr. Grady admitted that he drank three beers on the night he was stopped and that he had lied to *Page 3 
the police when asked whether he consumed any alcoholic beverages. However, Mr. Grady denied the police's characterization of him as being belligerent and uncooperative. Mr. Grady insisted that he simply did not understand the 2255 form.
 {¶ 7} In closing argument, the state, in an apparent attempt to undermine Mr. Grady's allegation that he did not understand the form, commented on the fact that he was college educated and that his father was an attorney. Defense counsel objected and moved for a mistrial, which the trial court denied.
 {¶ 8} The jury returned a guilty verdict. The trial court sentenced Mr. Grady to one hundred eighty days in jail, fined him $1,000 and suspended his driver's license for one year. The trial court suspended one hundred seventy days of jail time and $750 of the fine on the condition that he complete a seventy-two hour DUI school, that he commit no alcohol-related offenses for two years, and that he does not drive without a valid license. Mr. Grady was to be supervised by the probation department for one year, perform thirty-six hours of community service, undergo drug and alcohol monitoring for one year, and complete a drug and alcohol evaluation. The sentence was stayed pending the appeal.
 {¶ 9} Mr. Grady filed a timely appeal, raising one assignment of error: "The trial court erred in not declaring a mistrial for the reason of intentional prosecutorial misconduct."
 {¶ 10} Standard of Review
 {¶ 11} In his sole assignment of error, Mr. Grady contends that the trial court erred when it failed to grant his motion for a mistrial after the prosecutor made *Page 4 
inappropriate comments regarding his father's occupation as an attorney in closing argument.
 {¶ 12} The determination of whether a mistrial should have been granted is reviewed under an abuse of discretion standard. State v.Moore, 11th Dist. No. 2003-T-0028, 2004-Ohio-3542, at ¶ 21, citingState v. Garner (1995), 74 Ohio St.3d 49, 59. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Measor v. Measor, 160 Ohio App.3d 60, 2005-Ohio-1417, at ¶ 9, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144, andBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 13} Although a trial court is afforded discretion to grant or deny a mistrial, that discretion is not unlimited. A mistrial must be declared where the accused has suffered material prejudice, "where there is `a manifest necessity to do so,' or in order to `serve the ends of public justice.'" State v. Smith (Jan. 27, 1995), 11th Dist. No. 94-A-0032, 1995 Ohio App. LEXIS 247, at 7-8, citing State v. Abboud
(1983), 13 Ohio App.3d 62. "When the grounds for a mistrial are based on prosecutorial misconduct, a defendant must show that the alleged misconduct deprived him of a fair trial." Moore, at ¶ 21, citingState v. Hawkins (1993), 66 Ohio St.3d 339, 348.
 {¶ 14} Prosecutorial Misconduct
 {¶ 15} Mr. Grady contends that the state committed prosecutorial misconduct by commenting on the fact in closing argument that his father was an attorney, and that as a result, he was denied due process of law.
 {¶ 16} "To make a finding of prosecutorial misconduct, a reviewing court must determine whether the challenged statements were improper, and if so, whether the *Page 5 
remarks affected the defendant's substantial rights. A conviction will not be reversed "because of prosecutorial misconduct unless it so taints the proceedings that a defendant is deprived of a fair trial." State v.Poling, 11th Dist. No. 2004-P-0044, 2006-Ohio-1008, at ¶ 17; State v.Gabriel, 11th Dist. No. 2003-A-0126, 2005-Ohio-2263, at ¶ 31. Where a claim of prosecutorial misconduct is raised regarding statements made in closing argument, "[a]n appellate court must review the entire closing argument to determine whether the prosecutor's remarks were prejudicial to the accused." Id. at ¶ 40, citing State v. Tumbleson (1995),105 Ohio App.3d 693, 700. Because the prosecution is afforded latitude in closing arguments, "a reversal premised upon a prosecutor's statements is justified only where it `permeates the entire atmosphere of the trial.'" Id. at ¶ 40, citing United States v. Warner (C.A.6 1992), 955 F.2d 441,456.
 {¶ 17} Turning to the case at hand, during the state's case, the prosecution witnesses, members of the Brimfield Police Department, testified that Mr. Grady was uncooperative and was rambling, and refused to sign the 2255 form. In response, Mr. Grady took the stand in his own behalf and explained that he did not sign the form because he had questions pertaining to the form, which the officers did not answer. In fact, Mr. Grady said the officers were impatient and abrupt. He stated that he was not belligerent but was simply trying to understand the form. On cross-examination, the state asked Mr.Grady the following questions, to which there was no defense counsel objection:
 {¶ 18} "Q. I assume — — did you graduate from college?
 {¶ 19} "A. Yes.
 {¶ 20} "Q. What type of degree did you get? *Page 6 
 {¶ 21} "A. Political Science.
 {¶ 22} "Q. What does your dad do for a living?
 {¶ 23} "A. He's an attorney.
 {¶ 24} "Q. So, he's an attorney.
 {¶ 25} "A. Uh-huh
 {¶ 26} "Q. What part of this 2255 form don't you understand?
 {¶ 27} "A. What I didn't understand was, was that I would be charged with a refusal when I had already submitted to an earlier breathalyzer test."
 {¶ 28} Apparently, Mr. Grady had submitted to a portable breathalyzer test and said he did not understand the consequences of submitting to that test and refusing the BAC test. After a sidebar conference, the parties agreed not to question Mr. Grady regarding the portable breathalyzer test.[1]
 {¶ 29} In closing argument, the state attacked Mr. Grady's credibility by honing in on the fact that he had lied when asked at the checkpoint whether he had consumed any alcohol, but admitted to consuming beer during his direct examination. The prosecutor continued to challenge Mr. Grady's credibility regarding his insistence that he did not understand the 2255 form during the following colloquy, which forms the basis of this appeal:
 {¶ 30} "[Assistant Prosecutor]: Back at the Brimfield Police Department he [Mr. Grady] was explained the 2255 form. He's an educated man. His dad's an attorney. *Page 7 
 {¶ 31} "[Defense counsel]: Your honor, I'm going to object and move for a mistrial. That is totally improper for him to argue to the jury that his dad's an attorney.
 {¶ 32} "The Court: Well —
 {¶ 33} "[Defense counsel]: There's no evidence of that.
 {¶ 34} "The Court: He admitted his father's an attorney.
 {¶ 35} "[Defense counsel]: What does that have to do with this?
 {¶ 36} "The Court: It's argument and you can make inferences, I guess. He's making an inference."
 {¶ 37} We find the state's comment to be highly improper and inflammatory. The fact that Mr. Grady's father was an attorney has absolutely no bearing whatsoever on whether it was feasible that Mr. Grady had questions regarding the effect of signing or refusing to sign the 2255 form, particularly where he had already submitted to a portable breathalyzer test and was allegedly confused when asked to submit to another test. In this regard, the prosecutor was completely off base in using evidence of his father's occupation as a means to test his credibility. In fact, such irrelevant evidence should have been excluded in the first place.
 {¶ 38} Nevertheless, despite the impropriety of this comment, we recognize that an isolated comment, albeit improper, will not constitute reversible error if it does not deprive the defendant of a fair trial.State v. Jenkins, 11th Dist. No. 2006-T-0058, 2007-Ohio-4227, at ¶ 54. In determining whether the comment was prejudicial, warranting a reversal, we consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the *Page 8 
court, and (4) the strength of the evidence against the defendant."State v. Young, 6th Dist. No. L-06-1106, 2007-Ohio-754, at ¶ 29.
 {¶ 39} The prosecutor's remarks were obviously intended to impeach Mr. Grady's credibility. By showing that Mr. Grady was educated and that his father was an attorney, the state was inferring that Mr. Grady should have understood the 2255 form and that his reason for not signing the form was unfounded. Although defense counsel objected to the prosecutor's comment during closing argument and moved for a mistrial, counsel failed to object to the question on cross-examination. The trial court, apparently believing that the comment was a correct inference, allowed the prosecutor to continue with his closing argument, without admonishing the prosecutor and without giving a curative instruction. In fact, the trial court inappropriately discussed the merits of the motion and the inference in the jury's presence.
 {¶ 40} The prosecuting attorney most certainly struck a foul blow by making reference to the fact that Mr. Grady's father was an attorney, and by using that comment to infer a lack of credibility and truthfulness in Mr. Grady's character. Nevertheless, although the prosecutor's comment was inappropriate as was the discussion of the motion in the jury's presence, we do not believe Mr. Grady's right to a fair trial was prejudiced, as "[a] reversal for prosecutorial misconduct is not warranted unless it is clear beyond a reasonable doubt that the outcome of the trial would have been different but for the misconduct."State v. Tyler, 10th Dist. No. 05-AP-989, 2006-Ohio-6896, at ¶ 20, citing State v. Smith (1984), 14 Ohio St.3d 13, 15.
 {¶ 41} The record demonstrates that there was overwhelming evidence supporting Mr. Grady's DU I conviction. All of the officers detected alcohol on Mr. *Page 9 
Grady's breath and observed that his eyes were red and bloodshot. Mr. Grady was described as being argumentative, belligerent, and he kept rambling when asked questions by the police. Furthermore, when the officers conducted field sobriety tests, four out of six of the clues were observed in the HGN test, and Mr. Brady also failed the walk and turn test. Given the strength of the evidence presented, we do not find that the result of the trial would have been any different had this isolated comment not been made. Thus, appellant has failed to show that he was prejudiced by the prosecutor's isolated remark in closing argument. We therefore find no prosecutorial misconduct and find that the trial court was warranted in refusing to declare a mistrial. We overrule appellant's assignment of error.
 {¶ 42} We affirm the decision of the Portage County Municipal Court.
COLLEEN MARY OTOOLE, J., concurs,
DIANE V. GRENDELL, J., concurs in judgment only.
[1] Several sidebar conferences were held but were not transcribed; thus, we were not afforded the opportunity to review these sidebar conferences. We must also note that the quality of the transcription of these recorded proceedings, as attested to by the court reporter by affidavit, were poor. While we recognize that difficulties may arise, we can only hope that such problems will be addressed and avoided in the future. Fortunately, the quality of the transcription in no way affected our ability to review the record and to decide the merits of this case. *Page 1