OPINION
{¶ 1} Defendant-appellant, Cashmare M. Dennis, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} On June 1, 2007, Marcus Jones, his friend Clayden McNeil, and two girls were walking around their neighborhood in the near southeast side of Columbus, Ohio. As they walked, a car drove up to them and a man got out. As the man walked toward them, Jones heard the driver of the car, later identified as appellant, say "not yet." The *Page 2 
man, later identified as Stevie Price, got back into the car, and the car drove away. Jones asked McNeil if there was anything going on, and McNeil told him no.
 {¶ 3} The four continued walking. After a short time, the car again approached the group. This time, Tracie Ayers got out of the backseat of the car and fired shots at the group. A shot hit Jones in the back, causing him to fall to the ground. Ayers stood over Jones and attempted to shoot again, but his gun jammed. Jones heard appellant yelling "what the fuck are you doing; what the fuck are you doing. Get the fuck in the car; get the fuck in the car." Ayers did get back in the car and the car drove off.
 {¶ 4} Later that day, police interviewed both Jones and McNeil. They each identified three men in the car — appellant, Ayers, and Price — and identified Ayers as the shooter and appellant as the person driving the car. Jones and McNeil knew the men from the neighborhood.
 {¶ 5} As a result of these events, a Franklin County Grand Jury indicted appellant with two counts of felonious assault in violation of R.C. 2903.11 and one count of improperly discharging a firearm at or into a habitation or in a school safety zone in violation of R.C. 2923.161. Each count also contained a firearm specification pursuant to R.C. 2941.145. Appellant entered a not guilty plea and proceeded to a jury trial.
 {¶ 6} At trial, Jones and McNeil testified that Ayers shot Jones and that appellant drove Ayers to and away from the scene of the shooting. Ayers testified on appellant's behalf. Ayers had previously pled guilty to shooting Jones. He testified that he barely knew appellant and that appellant was not involved in the shooting. Instead, Ayers named two other people whom he said were with him that day. Appellant did not testify. *Page 3 
 {¶ 7} The jury found appellant guilty of one count of felonious assault and the attendant firearm specification. The trial court dismissed the other charges and specifications at the State's request and sentenced appellant accordingly.
 {¶ 8} Appellant appeals and assigns the following errors:
 FIRST ASSIGNMENT OF ERROR
 The trial court violated Cashmare Dennis's rights to due process and a fair trial when it entered a judgment of guilt against him, when that finding was against the manifest weight of the evidence.
 SECOND ASSIGNMENT OF ERROR
 The trial court violated Cashmare Dennis's rights to due process and a fair trial when it entered a judgment of guilt against him, when that finding was not supported by sufficient evidence.
 THIRD ASSIGNMENT OF ERROR
 Cashmare Dennis's rights to due process and a fair trial were violated due to prosecutorial misconduct.
 FOURTH ASSIGNMENT OF ERROR
 The trial court violated Cashmare Dennis's rights to due process and a fair trial and abused its discretion when it failed [to] declare a mistrial or give a limiting instruction subsequent to the State's objectionable comments during closing arguments.
 FIFTH ASSIGNMENT OF ERROR
 Cashmare Dennis's attorney provided him with the ineffective assistance of counsel and violated his right to due process and a fair trial where defense counsel failed to object to an act of prosecutorial misconduct during closing argument.
 SIXTH ASSIGNMENT OF ERROR
 Cashmare Dennis was denied his right to due process and a fair trial because of cumulative error. *Page 4 
 {¶ 9} For ease of analysis, we address appellant's assignments of error out of order. In his third assignment of error, he asserts the prosecutor engaged in misconduct during the State's closing argument. We disagree.
 {¶ 10} "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209,219, 102 S.Ct. 940. Accordingly, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial.State v. Maurer (1984), 15 Ohio St.3d 239, 266.
 {¶ 11} The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v.Smith (1984), 14 Ohio St.3d 13, 14; State v. Jackson (2001),92 Ohio St.3d 436, 441. In making this determination, this court must view the allegedly improper remarks in context and consider the entire closing argument to determine whether the remarks prejudiced the accused.State v. Treesh (2001), 90 Ohio St.3d 460, 466. Instances of prosecutorial misconduct can be harmless when they are incidental and isolated. State v. Lorraine (1993), 66 Ohio St.3d 414, 420, citingState v. Jenkins (1984), 15 Ohio St.3d 164, fn. 49.
 {¶ 12} Appellant claims that the prosecutor made two improper comments during closing argument that vouched for the credibility of the State's witnesses. Appellant first points to comments the prosecutor made regarding McNeil's identification of appellant as one of three people in the car. The prosecutor asked the jury:
 And if Clayden was lying because of a beef, how did he pick those three names? Half the south side wants to kill Clayden McNeil. Certainly, that's reasonable, based on the testimony *Page 5 
we had in this courtroom. Clayden McNeil had a beef with everybody.
 He named three names, and the first one he named happened to have tested positive for gunshot residue and pled guilty to his involvement in this offense. That's not a coincidence. It shows you that Clayden McNeil is telling you the truth about the incident.
 {¶ 13} Appellant also challenges the prosecutor's comments concerning Jones' identification of appellant:
 Based on the circumstances under which Marcus Jones initially made the identification, how quickly it was made, and the fact that he's adamant about it now should establish to you that he is telling the truth.
 {¶ 14} Appellant did not object to these comments during the prosecutor's closing argument. The failure to object to alleged prosecutorial misconduct waives all but plain error. State v.LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 126; State v. Loch, Franklin App. No. 02AP-1065, 2003-Ohio-4701, at ¶ 43.
 {¶ 15} Prosecutors may not properly express their personal belief about the credibility of witnesses. State v. Jackson, 107 Ohio St.3d 53,2005-Ohio-5981, at ¶ 117. In order to vouch for a witness, the prosecutor must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue. Id. A prosecutor is permitted, however, to make fair comment on the credibility of witnesses based upon their testimony in open court. State v. Rodgers, Trumbull App. No. 2007-T-0003, 2008-Ohio-2757, at ¶ 58; State v. Mundy (1994),99 Ohio App.3d 275, 304.
 {¶ 16} The comments of the prosecutor challenged by appellant did not vouch for the State's witnesses. The comments neither implied knowledge of facts outside the record nor placed the prosecutor's personal credibility in issue. State v. Keene (1998), *Page 6 81 Ohio St.3d 646, 666. The statements were fair comments on the credibility of the witnesses based on their testimony. The prosecutor highlighted the evidence that supported each witnesses' credibility and identifications. There was nothing improper about these comments.
 {¶ 17} Appellant next contends that the prosecutor made an improper comment while discussing Ayers' testimony that two other people, not appellant, were in the car when he shot Jones:
 What do we know about the people he claimed were there? The first time he's taken the opportunity to clear his non-friend's name was on the stand today, and he did it, because he's smarter than the rest of us, by giving nicknames, street names. Is that sufficient identification for you? Did we get any evidence from the defense, from Traice Ayers, about —
At that point, appellant objected to the prosecutor's comment. The trial court sustained the objection, later noting that the prosecutor had misspoken and had only intended to say that Ayers' identification of the other people in the car was not sufficient or convincing.
 {¶ 18} Appellant contends that the prosecutor's comment improperly commented on the lack of evidence he produced at trial and shifted the burden to him to put on a defense. Even if the comment was improper, [1] the trial court promptly sustained appellant's objection to the comment. The trial court went on to instruct the jury that "[t]he State of Ohio has the burden or obligation to prove through the evidence received in this trial beyond a reasonable doubt that [appellant] committed the essential elements of the crime of felonious assault charged in this case." The instructions also stated that appellant was presumed innocent of the charge and must be acquitted of the charge *Page 7 
unless "the state produces evidence that convinces you unanimously and beyond a reasonable doubt of every essential element of the crime." The trial court also instructed that appellant's decision not to testify was not evidence, and that the jury may draw no negative conclusions against him because he chose not to testify. These instructions clearly instruct the jury that the State has the burden to prove appellant guilty and that they may not take into account appellant's decision not to testify. Further, the instructions indicated that comments made by the attorneys during the trial, including closing arguments, are not evidence. Juries are presumed to follow the trial court's instructions. State v.Sankey, Stark App. No. 2005-CA-00272, 2006-Ohio-5316, at ¶ 37.
 {¶ 19} Given the trial court's prompt ruling sustaining appellant's objection to the prosecutor's comment, and the trial court's comprehensive instructions, we find that the prosecutor's isolated comment, even if improper, did not prejudice appellant. Treesh;Lorraine; State v. Grady, Portage App. No. 2007-P-0010, 2007-Ohio-6411, at ¶ 41.
 {¶ 20} Having found no prosecutorial misconduct, we overrule appellant's third assignment of error.
 {¶ 21} Appellant contends in his fourth assignment of error that the trial court should have granted a mistrial or, in the alternative, issued a limiting instruction, in response to the prosecutor's comments discussed in his third assignment of error. We disagree.
 {¶ 22} We first note that appellant requested a mistrial or, in the alternative, a limiting instruction, based solely on the prosecutor's comment regarding appellant's failure to produce evidence at trial. Thus, our review of the trial court's decision in this assignment of error will be limited to that comment. *Page 8 
 {¶ 23} A mistrial should not be ordered merely because some error or irregularity has occurred. State v. Reynolds (1988), 49 Ohio App.3d 27,33. A mistrial is an extreme remedy, declared only when the ends of justice so require and a fair trial is no longer possible. State v.Franklin (1991), 62 Ohio St.3d 118, 127; State v. Drayer,159 Ohio App.3d 189, 198, 2004-Ohio-6120, at ¶ 24. The trial court is in the best position to determine whether the circumstances in the courtroom warrant the declaration of a mistrial. State v. Ahmed, 103 Ohio St.3d 27,2004-Ohio-4190, at ¶ 92. Thus, the decision whether to grant a mistrial is within the discretion of the trial court, and will not be reversed on appeal absent an abuse of that discretion. State v. Iacona (2001),93 Ohio St.3d 83, 100; State v. Bruce, Franklin App. No. 07AP-355,2008-Ohio-4370, at ¶ 75. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Grady at ¶ 12.
 {¶ 24} Assuming the prosecutor's comment was improper, the trial court promptly sustained appellant's objection. Further, the trial court instructed the jury that the State had the burden to prove appellant guilty beyond a reasonable doubt and that he was presumed innocent of the charge and must be acquitted unless the State produced evidence that proved appellant's guilt beyond a reasonable doubt. These instructions clearly informed the jury that the State had the burden to prove appellant guilty. The trial court also instructed the jury that it could not draw negative conclusions against appellant because he chose not to testify. Finally, the trial court instructed the jury that comments made by the attorneys during the trial, including closing arguments, are not evidence. Given the trial court's actions and instructions, the prosecutor's isolated comment did not *Page 9 
deny appellant a fair trial. State v. Drummond, 111 Ohio St.3d 14,2006-Ohio-5084, at ¶ 131. The trial court did not abuse its discretion by refusing to grant a mistrial.
 {¶ 25} Nor did the trial court err when it denied appellant's request for an additional instruction that appellant had no burden in the case. Such an instruction would have been redundant. The trial court clearly instructed the jury that the State had the burden to prove appellant guilty beyond a reasonable doubt, and that the jury could not draw negative conclusions against appellant because he chose not to testify.
 {¶ 26} Because the trial court did not err in denying appellant's request for a mistrial or, in the alternative, a limiting instruction, we overrule appellant's fourth assignment of error.
 {¶ 27} In his fifth assignment of error, appellant contends that he received ineffective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052; accord State v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. Initially, appellant must show that counsel's performance was deficient. To meet that requirement, appellant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690. In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of *Page 10 
reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v.Louisiana (1955), 350 U.S. 91, 76 S.Ct. 158.
 {¶ 28} If appellant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires appellant to prove prejudice in order to prevail. Id. at 692. To meet that prong, appellant must show counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. Appellant would meet this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 29} Appellant contends that trial counsel was ineffective for failing to object to the prosecutor's comments during closing arguments that allegedly vouched for the credibility of the State's witnesses. We have determined, however, that these comments were not improper. Thus, counsel was not ineffective for failing to object. State v. Arment, Montgomery App. No. 19459, 2003-Ohio-4089, at ¶ 32. Appellant's fifth assignment of error is overruled.
 {¶ 30} Appellant contends in his first and second assignments of error that his conviction was not supported by sufficient evidence and is against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will separately discuss the appropriate standard of review for each. *Page 11 
 {¶ 31} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 32} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v.Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, at 273.
 {¶ 33} In order to convict appellant of felonious assault, the State had to prove beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2). Appellant does not *Page 12 
dispute that a gun constitutes a deadly weapon as defined by R.C. 2923.11(B). See State v. Thompson, Franklin App. No. 08AP-22,2008-Ohio-4551, at ¶ 11.
 {¶ 34} The State proceeded under the theory that appellant aided and abetted Ayers in shooting Jones. See R.C. 2923.03 ("No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense * * *."). A person aids or abets another when he supports, assists, encourages, cooperates with, advises or incites the principal in the commission of the crime and shares that criminal intent of the principal. State v.Lett, 160 Ohio App.3d 46, 2005-Ohio-1308, at ¶ 28. Such intent may be inferred from the circumstances surrounding the crime. Id.; State v.Buelow, Franklin App. No. 07AP-317, 2007-Ohio-5929, at ¶ 30.
 {¶ 35} Mere presence at the scene of the crime is not enough, by itself, to prove the defendant aided and abetted. State v. Johnson
(2001), 93 Ohio St.3d 240, 243. Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. Id. at 245; Buelow at ¶ 29; Lett at ¶ 29. The state must establish that the defendant took some role in causing the offense. Id. at ¶ 27; Buelow.
 {¶ 36} Appellant contends that although the State proved that he was present at the scene when Ayers shot Jones, it failed to prove that he aided and abetted Ayers. We disagree.
 {¶ 37} Jones and NcNeil both testified that appellant drove the car in which Ayers and Price were riding shortly before the shooting occurred. They both testified that Price got out of the car the first time the car pulled up to them. Jones testified that Price *Page 13 
returned to the car after appellant said "not yet." The car then drove off. Jones and McNeil both testified that the car returned, and that Ayers got out of the car this time. Ayers began firing his gun, hitting Jones. Jones testified that he heard appellant yelling "what the fuck are you doing, get in the car" as Ayers stood over him, attempting to shoot him again. McNeil testified that Ayers then got back into the car and appellant drove off.
 {¶ 38} This testimony is sufficient to prove that appellant aided and abetted Ayers. Appellant drove the car, with Ayers as a passenger, past Jones two times. The first time, he pulled the car up to the group and Price got out. Appellant told Price that it was too soon, so Price got back in the car. When appellant pulled up to the group the second time, Ayers got out of the backseat and began shooting. Appellant did not immediately drive away. Appellant yelled for Ayers to get back in the car and then drove Ayers away from the scene. Viewing this evidence in the light most favorable to the State, a reasonable jury could conclude that appellant was not merely at the scene of the shooting, but participated in the shooting by driving Ayers to and from the scene of the crime. See Lett, at ¶ 29; State v. Street (Oct. 21, 1998), Hancock App. No. 5-98-15 (defendant aided and abetted grandson by driving him away from scene of robbery). See, also, State v. Garner, Franklin App. No. 07AP-474, 2008-Ohio-944, at ¶ 21 ("The mere act of driving away from the scene of a shooting perpetrated by a passenger of a vehicle has been held to be sufficient to uphold a conviction based on complicity where the circumstances show the driver knew shots were being fired by the passenger.").
 {¶ 39} Appellant's manifest weight of the evidence argument requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. State v. *Page 14 Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, supra, at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 40} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson
(Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v.Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28;State v. Hairston, Franklin App. No. 01 AP-1393, 2002-Ohio-4491, at ¶ 74. *Page 15 
 {¶ 41} Appellant argues that Jones' and McNeil's testimony was not credible. He points to a number of inconsistencies in each of their testimonies regarding the shooting and an incident the night before the shooting. He contrasts that testimony with Ayers' testimony, who testified that appellant was not involved in the shooting. Ayers had already pled guilty to shooting Jones.
 {¶ 42} Appellant's argument requests this court to re-weigh the testimony and decide that Ayers' testimony was more credible than that of Jones and McNeil. We decline to do so. The jury was in the best position to determine the credibility of these witnesses and obviously chose to believe Jones and McNeil over Ayers. The jury did not lose its way in reaching this verdict. Although Jones' and McNeil's testimony differed in certain aspects, especially regarding an incident the night before the shooting, their testimony was consistent regarding the shooting. They both identified appellant as the driver of the car. They both described Price getting out of the car and then returning to the car. They both testified that the car returned a short time later. They both described how Ayers got out of the backseat of the car and shot Jones. Given this testimony, the jury did not clearly lose its way.
 {¶ 43} Nor did the jury clearly lose its way in rejecting Ayers' testimony. During cross-examination, the prosecutor questioned Ayers repeatedly about the number of lies he told the police after the shooting. Ayers admitted he lied to detectives during his interview. Further, at his plea hearing, Ayers did not dispute the prosecutor's statements that appellant was the driver of the car. It was well within the province of the jury to reject Ayers' testimony as not credible. *Page 16 
 {¶ 44} Appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Accordingly, we overrule his first and second assignments of error.
 {¶ 45} Finally, appellant contends in his sixth assignment of error that the cumulative effect of the alleged errors at his trial deprived him of a fair trial. In order to find the presence of cumulative error, we must find that multiple errors were committed at trial. State v.Madrigal (2000), 87 Ohio St.3d 378, 398. Here, we have found no errors. Thus, there can be no cumulative error. State v. Ball, Erie App. No. E-02-024, 2004-Ohio-2586, at ¶ 44. Appellant's sixth assignment of error is overruled.
 {¶ 46} In conclusion, we overrule appellant's six assignments of error and affirm the judgment of the Franklin County Common Pleas Court.
Judgment affirmed.
McGRATH, P.J., and BRYANT, J., concur.
[1] We are inclined to agree with the trial court that the comment was apparently a mistake, as the prosecutor quickly corrected herself by indicating she was discussing the quality of Ayers' testimony, not the absence of evidence produced by appellant. *Page 1