[Cite as *State v. Brown*, 2012-Ohio-416.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                   :            C.A. CASE NO.    24420

v.                                               :            T.C. NO.    10CR1459

ANTHONY L. BROWN                                 :              (Criminal appeal from
                                               Common Pleas Court)
    Defendant-Appellant                  :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   3rd   day of   February  , 2012.

. . . . . . . . . .

TIMOTHY J. COLE, Atty. Reg. No. 0084117, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

PETER GALYARDT, Atty. Reg. No. 0085439, 250 E. Broad Street, Suite 1400, Columbus, Ohio 43215
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}   Defendant-appellant Anthony L. Brown appeals his conviction and sentence for two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1), both felonies of the first degree.

{¶ 2} Brown filed a motion for leave to file a delayed appeal with this Court on January 6, 2011. On January 28, 2011, we granted Brown's motion, and he filed the instant appeal.

I

{¶ 3} The incident which forms the basis for the instant appeal occurred between two and three p.m. on May 3, 2010, when Carrie Yount and Nacole DeBusk were robbed while sunbathing on the back porch of Yount's residence located at 640 Kenwood Avenue in Dayton, Ohio. Yount testified that while DeBusk spoke to an unidentified white male who remained at the bottom of the porch steps, three black males approached the porch. One of the black males asked Yount and DeBusk if they had a cell phone that he could use. When DeBusk denied his request, the black male pulled out a handgun and walked up the porch steps towards the women. The armed male put the handgun up to Debusk's head and demanded money. The other two black males, one of whom was later identified as Brown, remained standing at the bottom of the steps.

{¶ 4} Yount testified that while the armed male kept the handgun pointed at DeBusk's head, Brown directed him to take the women's cell phones. Brown also ordered the gunman to "check [DeBusk's] breasts" for any items hidden there. The gunman reached down DeBusk's shirt and groped her breasts. The gunman also attempted to take DeBusk's necklace, but was unable to break the clasp on the chain. As Brown continued to give instructions from his position at the bottom of the stairs, the gunman ran inside Yount's residence through the back door. While the gunman was in the house, Yount testified that Brown and the third suspect attempted to rob the white male who had been speaking to

DeBusk earlier. Yount testified that Brown and the other suspect began punching and kicking the white male when he refused to hand over his property to them.

{¶ 5} Yount further testified that while the robbery was taking place, a white Cadillac drove up and briefly stopped behind Yount's residence before quickly driving away. Yount testified that Brown yelled, "Let's go, come on!" The gunman ran out of Yount's residence, and the three suspects ran across the street and entered an older silver-green Pontiac Grand Am with some body damage and drove away. After the suspects left, Debusk discovered that the gunman had stolen money and credit cards out of her purse when he went into Yount's residence during the robbery.

{¶ 6} Yount and DeBusk ran to a neighbor's residence and called the police in order to report the robbery. The female victims, however, were not interviewed by the police until May 6, 2010, when Detective William Elzholz and Officer Matthew Heiser from the Dayton Police Department spoke to both women individually for the purpose of showing them photo spreads in an effort to identify the perpetrators. The spreads were shown to each woman individually at separate locations. Both women identified Brown as the individual who stood at the bottom of the steps and gave instructions to the gunman during the robbery. On the same date, after a brief chase, Brown was arrested while driving a vehicle which purportedly matched the description of the car in which the three suspects left the scene of the robbery.

{¶ 7} Brown was subsequently indicted for two counts of aggravated robbery and one count of failure to comply. Both aggravated robbery counts were accompanied by firearm specifications. At his arraignment on June 24, 2010, Brown stood mute, and the

trial court entered a plea of not guilty on his behalf to all of the counts in the indictment. Brown filed a motion to suppress the photo-spread identifications on July 7, 2010. After a hearing held on July 30, 2010, the trial court overruled Brown's motion to suppress, issuing findings of fact and conclusions of law from the bench at the end of the hearing.

{¶ 8} On August 23, 2010, Brown pled no contest to one count of failure to comply with the signal of a police officer. After his no contest plea, Brown filed a motion in limine requesting that the State be barred from any mention of Brown's flight from the police officers before his arrest on May 6, 2010. The trial court granted Brown's motion. The case then proceeded to trial on the two remaining aggravated robbery counts with the accompanying firearm specifications. Brown was subsequently found guilty on both counts of aggravated robbery, but the jury was unable to reach a verdict regarding the firearm specifications. The trial court sentenced Brown to an aggregate term of eleven years in prison: to wit, nine years for each count of aggravated robbery to be served concurrently to one another, but consecutive to two years for the single count of failure to comply.

{¶ 9} It is from this judgment which Brown now appeals.

II

{¶ 10} Because they are interrelated for the purposes of our analysis, Brown's first, second, and third assignments of error will be discussed as follows:

{¶ 11} "THE TRIAL COURT VIOLATED ANTHONY BROWN'S DUE PROCESS RIGHTS AND ABUSED ITS DISCRETION WHEN IT DENIED MR. BROWN'S REQUEST FOR A MISTRIAL BASED UPON WITNESS TESTIMONY OF A PREJUDICIAL PRIOR BAD ACT."

{¶ 12} "THE TRIAL COURT VIOLATED ANTHONY BROWN'S DUE PROCESS RIGHTS AND COMMITTED PLAIN ERROR WHEN IT FAILED TO DECLARE A MISTRIAL DUE TO IRREPARABLE, PREJUDICIAL STATEMENTS UNRELATED TO THE CRIMES FOR WHICH HE WAS ON TRIAL."

{¶ 13} "ANTHONY BROWN WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 14} Upon review, we have located several instances of trial testimony which are problematic insofar as they are prejudicial, in some instances severely, to Brown and his ability to receive a fair trial. Provided below are the prejudicial examples of testimony adduced during trial:

1) Objectionable Testimony of Officer M. Heiser

{¶ 15} "The State: All right. You said you knew how Det. Elzholz developed the photo spread?

{¶ 16} "Officer Heiser: Yes.

{¶ 17} "Q: Okay. And how was that?

{¶ 18} "A: *There was a previous robbery*."

{¶ 19} Brown's defense counsel objected to Officer Heiser's statement regarding a previous robbery. Defense counsel also moved for a new trial. The trial court sustained the objection to the testimony and ordered the response stricken from the record. The trial court, however, denied defense counsel's motion for a new trial. On appeal, Brown argues that the comment was extremely prejudicial because it linked him to a previous robbery and was inadmissible as a prior bad act under Evid. R. 404(B). Brown asserts that Officer

Heiser's testimony improperly established that he had a propensity to commit the crimes for which he was presently charged.

{¶ 20} A mistrial should not be ordered merely because of some error or irregularity at trial. *State v. Dennis*, 10th Dist. No. 08AP-369, 2008-Ohio-6125, 2008 WL 5049749, ¶ 23. Mistrials need to be declared only when the ends of justice so require, and a fair trial is no longer possible. *State v. Garner* (1995), 74 Ohio St.3d 49, 59. The decision whether to grant a mistrial lies within the trial court's sound discretion. Id. "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 21} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161.

{¶ 22} Normally, in determining whether the trial court properly exercised its discretion, reviewing courts look to whether (1) "there [was] a 'manifest necessity' or a 'high degree' of necessity for ordering a mistrial, or (2) 'the ends of public justice would otherwise be defeated.'" *State v. Widner* (1981), 68 Ohio St.2d 188, 189-190, 429 N.E.2d 1065, citing *Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717. A

"manifest necessity" for a mistrial does not mean that a mistrial was absolutely necessary or that there was no other alternative. *Arizona v. Washington*, 434 U.S. 511. In order to exercise "sound discretion" in determining that a mistrial is necessary, the trial judge should allow the defense and prosecution to state their positions on the issue, consider their competing interests, and explore some reasonable alternatives before declaring a mistrial. Id. at 514-516.

2) Objectionable Testimony of Carrie Yount

{¶ 23} "The State: And when you went to your neighbor [immediately after the robbery], were you upset?

{¶ 24} "Yount: Yeah, we were upset. And my friend had urine all over her, I mean, she was hysterical. So we were just kind of pretty much calm her down [sic].

{¶ 25} "Q: Were you emotional as well?

{¶ 26} "A: I mean, yeah. I wasn't too much. I was pretty much like, what just happened? I have to live in this house with my kids, what just happened? I was pretty much – that was pretty much my thing.

{¶ 27} "Q: Were you in shock?

{¶ 28} "A: Yeah, I was pretty much like this – you know, karma, like how did this happen to me?

{¶ 29} "Q: *Are you still scared?*

{¶ 30} "A: *Well, I'm scared because the family members of Mr. Brown have sent death notes to my house –*

{¶ 31} "Defense Counsel: Objection.

{¶ 32} "The Court: Sustained. Disregard that response."

{¶ 33} The Sixth Amendment to the U.S. Constitution guarantees that "the accused shall enjoy the right to a *** trial, by an impartial jury *** (and) be confronted with the witnesses before him ***." *Parker v. Gladden* (1966), 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420. "The evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. State of Louisiana* (1965), 379 U.S. 466, 472-473, 85 S.Ct. 546, 550, 13 L.Ed.2d 424. "The entire thrust of rules of evidence and the other protections attendant upon the modern trial is to keep extraneous influences out of the courtroom." Id.

{¶ 34} "Error in the admission or exclusion of evidence in a criminal trial must be considered prejudicial unless the court can declare, beyond a reasonable doubt, that the error was harmless, and unless there is no reasonable probability that the evidence, or the exclusion of evidence, may have contributed to the accused's conviction." *State v. Bayless* (1976), 48 Ohio St.2d 73, 106, 357 N.E.2d 1035, vacated on other grounds, *Bayless v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155. The state bears the burden of demonstrating harmless error. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15.

{¶ 35} Although, defense counsel's objection was sustained, and the court directed the jury to disregard Yount's response, defense counsel did not move for a mistrial. This exchange occurred on the first day of the trial, as Yount was the first witness to testify on behalf of the State.

{¶ 36} Initially, we note that a jury will normally be presumed to follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury would be unable to follow the court's instructions and a strong likelihood that the effect would be devastating to the defendant. *Greer v. Miller* (1987), 483 U.S. 356, 107 S.Ct. 3102, 97 L.Ed.2d 618. Yount's statement regarding the alleged death threats from Brown's family was clearly prejudicial, wholly irrelevant, and unsubstantiated on this record. Brown argues that after Yount was allowed to testify regarding the alleged death threats, a fair trial was no longer possible, and a reasonable probability existed that Yount's comment was sufficiently detrimental to overcome any confidence in the outcome of the jury's verdict. Further, had a mistrial been requested, Brown asserts that a reasonable probability exists that the result of the trial would have been different, to wit: the mistrial would have been granted, and Brown would have received a new trial.

{¶ 37} Simply put, Yount's statement so early in the proceedings vilified Brown and was highly prejudicial. The trial judge's instruction to the jurors was insufficient as a matter of law to cure the prejudicial effect of Yount's statement. "We will not blindly assume that a jury is able to follow a *** court's instruction to ignore the elephant in the deliberation room." *U.S. v. Morena* (C.A.3, 2008), 547 F.3d 191, 197. The State introduced the prejudicial material by a question that was itself improper

3) Testimony of Officer Susan Benge

{¶ 38} "The State: Did you have any other contact with Ms. Carrie Yount after that? After you – when she came into the police station?

{¶ 39} "Officer Benge: No, sir.

{¶ 40} "Q: Okay. *Was Mr. Brown taken into custody with regarding a traffic stop* [sic]*?*

{¶ 41} "A: *It wasn't a traffic stop. He was – there was aggravated robbery warrant out for him at that time and he had fled from other officers*."

{¶ 42} Although Officer Benge's statement clearly violated the trial court's ruling regarding the liminal motion barring the State from mentioning the circumstances under which Brown was apprehended on May 6, 2010, defense counsel did not object nor did he request a mistrial given the State's line of questioning and Officer Benge's answer.

{¶ 43} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * * . Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

In light of the foregoing, defense counsel's failure to object to Officer Benge's statement was certainly deficient. It was also deficient for defense counsel to fail to request a mistrial after Yount stated that she had received death threats from Brown's family.

{¶ 44} Viewed together, the errors made by defense counsel, as well as the improper statements made by Officers Heiser and Benge and Carrie Yount necessitated that the trial court declare a mistrial. The cumulative effect of the improper admissions and deficient performance of defense counsel undermines any confidence in the outcome and rendered it manifestly obvious that a fair trial was no longer possible. Accordingly, the "ends of justice required a mistrial," and the trial court erred when it failed to declare one.

{¶ 45} Finally, we note that the instant case does not present a situation where the defendant was convicted by overwhelming evidence. There was no physical evidence, the complainants did not file a report with the police until two days after the crime, and there is no indication that physical descriptions of the assailants were ever provided to police (other than "one was shorter than the other"). Significantly, the only independent witness, a neighbor, indicated that the complainants told her that they were robbed by two men, not three. The State's case against Brown hinged upon the credibility of the eyewitness testimony of Yount and DeBusk. Significantly, although a *Telfaire* instruction was not necessarily required, we note that there is no justification on this record not to have requested and received one as well. *U.S. v. Telfaire* (C.A.D.C. 1972), 469 F.2d 552.

III

{¶ 46} Brown's fourth and final assignment of error is as follows:

{¶ 47} "THE TRIAL COURT ERRED BY IMPOSING COURT COSTS

WITHOUT NOTIFYING ANTHONY BROWN THAT FAILURE TO PAY THOSE COSTS MAY RESULT IN THE COURT'S ORDERING HIM TO PERFORM COMMUNITY SERVICE."

{¶ 48} In light of disposition with respect to Brown's first, second, and third assignments of error, his fourth assignment is rendered moot.

{¶ 49} Accordingly, Brown's conviction is reversed and vacated, and this matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Timothy J. Cole
Peter Galyardt
Hon. Mary Katherine Huffman